IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Woodrow Wilson, | Case No. 3:15 CV 1099 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Lt. Jane Doe Callahan, et al., | |
| Defendants. | |

## INTRODUCTION

Pro se Plaintiff Woodrow Wilson filed this action under 42 U.S.C. § 1983 against Lieutenant Callahan, Corrections Officer Sergeant Shrider, Librarian Carder, Corrections Officer Doe, Corrections Officer Donovon, Institutional Inspector Schamblin, Security Supervisor Major Doe, Captain Doe, and Education Department Principal, all employed by the Allen Correctional Institution ("ACI"). For the reasons below, this Court dismisses the Complaint (Doc. 1).

## BACKGROUND

Wilson used to be a law clerk for Librarian Carder (*id*. at 5). But because Wilson began advising other inmates on filing grievances against Carder, Wilson says she retaliated against him by filing "a materially false incident report" in which she alleged he ran a for-profit business, in violation of prison rules, charging other inmates for his services as a jailhouse lawyer (*id*. at 5–7). While Wilson sat in segregation housing, Carder further retaliated against him by deleting Wilson's legal files from the prison computer without notice to Wilson or his permission (*id*. at 7).

Corrections Officer Donovon investigated Wilson's side business (*id.* at 10). Donovon also is godfather to Wilson's cell mate, who does not get along with Wilson (*id.*). Wilson's cell mate told Donovon that Wilson was running the business from his cell (*id.*). At the same time, Donovon concealed evidence he learned from other inmates, who testified that, while Wilson had helped them prepare grievances or legal filings, he did not charge for his services (*id.*). Wilson states that Donovon's actions are retaliation against Wilson for his disagreement with Donovon's godson.

Corrections Officer Sergeant Shrider also participated in an "unlawful investigation against" Wilson and omitted "essential documents" and exculpatory evidence from reports prepared in connection with the investigation (*id.* at 8). Shrider interfered with Wilson's receipt of legal and commercial mail, and refused to help Wilson locate personal property that ACI staff lost "during the officers' pack up of" Wilson's property (*id.*). Likewise, a John Doe corrections officer "held[] back" Wilson's outgoing legal mail and improperly arranged for Wilson's commercial mail to be returned to its sender (*id.* at 9).

Lieutenant Callahan was a Rules Infraction Board ("RIB") member, who Wilson says denied him due process by conducting her own investigation into Carder's incident report (*id.* at 12). ACI prohibits RIB members from conducting such investigations and, moreover, Callahan's investigation included witness intimidation and the withholding of exculpatory evidence (*id.*). Relatedly, Callahan violated Wilson's due process rights by sitting as an RIB member, even though she had conducted an independent investigation and knew certain documents were not part of the record (*id.* at 13). And she violated Wilson's due process and equal protection rights by finding Wilson committed a rule infraction, even though (1) he had never been informed his alleged conduct was a rule violation, (2) the ODRC report lacked any details about the alleged violation (*e.g.*, who paid for Wilson's legal assistance or when), and (3) at most the evidence showed an attempted rule

2

violation (*id.*). Callahan falsified the record and obstructed administrative appellate review of the RIB's findings and related grievances (*id.* at 13–14).

Finally, Major Doe and Captain Doe failed to investigate Callahan's conduct after learning of it through the grievance process, and Education Department Principal failed to address Carder's conduct (*id.* at 15). Wilson states that Institutional Inspector Schamblin denied him due process, impartial treatment, and equal protection by denying the grievance Wilson filed following the RIB finding (*id.* at 11).

## STANDARD OF REVIEW

Although pro se pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court must dismiss an in forma pauperis action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted or lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest that clearly does not exist. *Id.* at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quotation marks omitted). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all allegations in the complaint are true. *Twombly*, 550 U.S. at 555. A plaintiff need not include detailed factual allegations in the complaint, but "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Iqbal*, 556 U.S. at 678. This Court construes a complaint's factual allegations in the light most favorable to the plaintiff. *Lambert v. Hartman*, 517 F.3d 433,

3

439 (6th Cir. 2008). This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## DISCUSSION

*Retaliation Claims.* Wilson's retaliation claims against Carder and Donovon fail because Wilson does not plausibly allege he engaged in protected activity. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (explaining a First Amendment retaliation claim requires (1) protected activity, (2) adverse action, and (3) a causal connection between protected activity and adverse action). A prisoner generally does not have a First Amendment right to assist others with their legal claims. *Id.* at 395. Rather, "a 'jailhouse lawyer's' right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with [another] inmate's ability to present his grievances to a court." *Id.* Wilson does not plausibly allege that Carder's retaliation against him has interfered with another inmate's court access. Likewise, Wilson alleges that Donovon retaliated against him because Donovon's godson did not get along with Wilson, but Wilson's failure to get along with his cell mate is not protected conduct.

*Due Process Claims.* The Fourteenth Amendment provides that a government actor may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Due Process Clause sets minimum procedures a government must provide before depriving a plaintiff of these interests and, further, bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

However, a plaintiff can bring a Section 1983 due process claim only in relation to the deprivation of a protected liberty or property interest. *Bd. of Regents of State Colleges v. Roth*, 408

4

U.S. 564, 569–70 (1972). And a prisoner-plaintiff must confront the fact that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (quotation marks and brackets omitted). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Id.* at 480 (quotation marks omitted). Unless prison discipline includes withdrawal of good time credits or imposes an unusual hardship on the inmate, no liberty or property interest exists, and thus the prison discipline does not trigger minimal due process safeguards. *See id.* at 484.

Wilson does not identify the sanctions imposed following the RIB's decision. Wilson does not explain why he was placed in segregation housing -- for the rule infraction finding or some other reason -- or how long he was held there. Therefore, the Complaint does not plausibly allege deprivation of a constitutionally protected interest.

Even if such an interest were at stake, this Court's review is limited to the process Wilson received. Under the Due Process Clause, that process must include (1) advance written notice of the hearing, (2) an opportunity, consistent with institutional safety and correctional goals, to call witnesses and present evidence in his defense, and (3) a written statement by the factfinder of the basis for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974). Wilson does not allege that he was denied any of this process. To the extent Wilson's claim is based on the assertion that he is innocent of the rule infraction, this Court's cannot provide relief from the RIB's adjudication if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455–56 (1985).

Wilson's own allegations show that statements from his cell mate and other anonymous sources supported the rule infraction charge. Wilson does not plausibly allege a denial of due process.

*Equal Protection Claims.* "The Equal Protection Clause prohibits discrimination by government which . . . burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011). Wilson's equal protection claims rest on pure legal conclusions, which are insufficient to state a claim for relief.

*Supervisory Claims.* Wilson's claims against Major Doe, Captain Doe, and Education Department Principal fail as well. Wilson does not allege that any of these supervisors actively engaged in the purported unconstitutional behavior; he simply states that each had the right to control employees who did engage in unconstitutional actions, but failed to do so. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). On these threadbare allegations, Schramblin likewise cannot be held liable for his role in denying Wilson's grievances. *See Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999).

*Mail Interference Claims.* Wilson's mail-interference claims, directed against Corrections Officer Doe and Shrider, do not provide sufficient notice to either Defendant as to the legal theory underlying the claim or the role either Defendant played. *See, e.g.*, *Twombly*, 550 U.S. at 570 (explaining a complaint must allege enough facts to "nudge[ a] claim[] across the line from conceivable to plausible"); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008) ("The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests." (quotation marks omitted)). Wilson's mail-interference claim fails.

6

**CONCLUSION**

For these reasons, this Court dismisses the Complaint (Doc. 1) and certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. This Court denies as moot Wilson's Motion for the Appointment of Counsel (Doc. 6).

IT IS SO ORDERED.

                                                      s/ *Jack Zouhary*
                                                  JACK ZOUHARY
                                                  U. S. DISTRICT JUDGE

October 28, 2015